Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| LIZ NOEMÍ KEENER Y DAVID KEENER Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES, AMBOS POR SÍ Y EN REPRESENTACIÓN DE SU HIJA MENOR, N.I. KEENER<br><br>Recurridos<br><br>v.<br><br>PEP BOYS-MANNY, MOE & JACK OF PUERTO RICO, INC. H/N/C/ PEP BOYS<br><br>Peticionario | TA2025CE00833 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2024CV02262<br><br>Sobre: Daños y perjuicios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece la parte peticionaria, Pep Boys-Manny, Moe & Jack of Puerto Rico, Inc. h/n/c Pep Boys, mediante el recurso de epígrafe, y nos solicita que revoquemos una *Resolución y Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 12 de septiembre de 2025, y notificada el 15 de septiembre de 2025. Mediante el referido dictamen, el foro primario declaró No Ha Lugar una *Solicitud de Sentencia Sumaria* presentada por la parte peticionaria.

Por los fundamentos que se exponen a continuación, se expide el auto solicitado y, tras concluir que corresponde dictar sentencia sumaria a favor de la parte peticionaria, se revoca la *Resolución y Orden* recurrida. En virtud de ello, se dicta sentencia sumaria a favor de la parte peticionaria, se declara No Ha Lugar la *Demanda*

de epígrafe y se ordena el archivo del presente caso a nivel de instancia.

**I**

El 23 de abril de 2024, Liz Noemí Keener, David Keener y la Sociedad Legal de Gananciales compuesta por ambos, por sí y en representación de su hija menor de edad, a quien identificaron como N.I. Keener (en conjunto, parte recurrida) presentaron una *Demanda* sobre daños y perjuicios en contra de la empresa Pep Boys-Manny, Moe & Jack of Puerto Rico, Inc. h/n/c Pep Boys (Pep Boys o parte peticionaria).[1] En esencia, la parte recurrida alegó que, el 11 de diciembre de 2023, Liz Noemí Keener llevó un vehículo de motor que utiliza como parte de su trabajo en la Oficina del Inspector General del Seguro Social Federal, a la tienda Pep Boys que ubica en un centro comercial de Dorado, para un cambio de batería. Asimismo, alegó que ese día habló con el gerente de la tienda y le explicó que el auto tenía un ruido que deseaba le revisaran. Adujo que, en consecuencia, el gerente le delegó la revisión del vehículo a uno de los mecánicos empleados en la tienda en ese momento, quien se montó con ella al vehículo para realizar una prueba, tras lo cual, de forma irrespetuosa y abusiva, le realizó insinuaciones sexuales y ofensivas a su honra.

Como remedios, reclamó una indemnización ascendente a $1,000,000.00 para resarcir los daños, sufrimientos y angustias mentales que Liz Noemí Keener alegó experimentar. Asimismo, reclamó $500,000.00 correspondientes a los daños, sufrimientos y angustias mentales presuntamente experimentados por David Keener, así como $200,000.00 por concepto de los daños económicos que sufrió la Sociedad Legal de Gananciales compuesta por ambos. Por último, solicitó una indemnización de $400,000.00

---

[1] Entrada Núm. 1 del caso núm. BY2024CV02262 del SUMAC.

en resarcimiento por los daños, sufrimientos y angustias mentales que presuntamente sufrió la menor, N.I. Keener.

El 8 de julio de 2024, Pep Boys presentó una *Contestación a la Demanda*.[2] En síntesis, la parte peticionaria rechazó la versión de los hechos presentada por la parte recurrida en la *Demanda* y negó haber incurrido en cualquier acto culposo o negligente. Asimismo, argumentó que no es responsable de las acciones individuales de sus empleados y que tampoco incurrió en conducta que pueda catalogarse como negligente en el manejo de la situación.

Por su parte, el 7 de marzo de 2025, David Keener presentó una *Moción de Desistimiento*.[3] Mediante esta, desistió con perjuicio de la causa de acción instada en contra de la parte peticionaria. Consecuentemente, ese mismo día, el foro *a quo* emitió una *Sentencia Parcial*, que fue notificada el 10 de marzo del mismo año, en la que acogió el desistimiento con perjuicio, de conformidad con la Regla 39.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.1, sin imposición de costas, gastos, ni honorarios de abogado.[4]

Luego de varias incidencias procesales, que incluyeron el descubrimiento de prueba, el 7 de julio de 2025, Pep Boys presentó una *Solicitud de Sentencia Sumaria*.[5] Mediante la moción dispositiva aludida, sostuvo que no existe fundamento alguno para concluir que, en este caso, subsisten hechos materiales en controversia que impidan la desestimación sumaria de la *Demanda* de epígrafe. A tales efectos, identificó 142 hechos que entiende se encuentran incontrovertidos y que bastan para disponer del caso, basados en la prueba documental presentada y en las admisiones bajo juramento de Liz Noemí Keener.

---

[2] Entrada Núm. 8 del caso núm. BY2024CV02262 del SUMAC.
[3] Entrada Núm. 26 del caso núm. BY2024CV02262 del SUMAC.
[4] Entrada Núm. 28 del caso núm. BY2024CV02262 del SUMAC.
[5] Entrada Núm. 66 del caso núm. BY2024CV02262 del SUMAC.

Por su parte, y tras solicitar y obtener una prórroga, el 5 de agosto de 2025, la parte recurrida presentó un escrito que tituló *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial.*[6] Esencialmente, adujo coincidir en que, de los 142 hechos presentados como incontrovertidos por Pep Boys, 114 en efecto lo están, mientras que, a su juicio, los otros 82 no guardan relación alguna con la responsabilidad de la parte peticionaria. En cambio, entiende que estos podrían ser considerados con posterioridad en la fase de cuantificación de los daños.

Asimismo, la parte recurrida reclamó que procedía que el foro *a quo* dictara una sentencia sumaria parcial en la que declarase la responsabilidad de Pep Boys por los daños que sufrió Liz Noemí Keener. De este modo, adujo que únicamente quedaría pendiente la adjudicación de *la cuantía* de los daños sufridos. Como asunto esencial en controversia, la parte recurrida identificó el único hecho siguiente:

> Si habiendo la demandada reconocido los actos sufridos por la demandante como patrocinadora y visitante de sus facilidades, responde por los daños de esta al haber sido víctima de actos que constituyen delito bajo el Código Penal de Puerto Rico.

Así, luego de evaluar la postura de ambas partes, el 12 de septiembre de 2025, el foro primario emitió la *Resolución y Orden* recurrida, la cual fue notificada el 15 de septiembre del mismo año.[7] Mediante esta, el foro *a quo* declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* instada por Pep Boys. Ello, tras formular 102 determinaciones de hechos incontrovertidos, así como identificar los siguientes hechos en controversia:

1) Al reclutar, entrenar y supervisar al Sr. Julio Ángel Oquendo Morales, ¿Pep Boys empleó toda la diligencia de un buen padre de familia como para liberarse de responsabilidad?

---

[6] Entrada Núm. 70 del caso núm. BY2024CV02262 del SUMAC.

[7] Entrada Núm. 71 del caso núm. BY2024CV02262 del SUMAC.

2) De no demostrarse lo anterior, ¿a cuánto ascienden los daños ocurridos a la señora Keener?

En desacuerdo, el 30 de septiembre de 2025, la parte peticionaria instó una *Moción de Reconsideración* oportuna.[8] En el referido escrito, Pep Boys argumentó que los hechos en controversia identificados por el foro primario constituyen, en realidad, asuntos de derecho que no requieren la celebración de un juicio. Luego de solicitar y obtener una prórroga, el 20 de octubre de 2025, la parte recurrida presentó un escrito que tituló *Oposición a la Solicitud de Reconsideración.*[9]

Tras evaluar la postura de las partes, el 3 de noviembre de 2025, el foro primario emitió y notificó una *Resolución y Orden*, en virtud de la cual declaró No Ha Lugar la solicitud de reconsideración.[10] En virtud de este dictamen, el foro *a quo* reiteró que la posible responsabilidad vicaria de Pep Boys es un asunto que se encuentra controvertido y cuya adjudicación requiere llevar a cabo un juicio en su fondo.

Todavía inconforme, el 1 de diciembre de 2025, Pep Boys acudió ante este Foro mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró y abusó de su discreción el Tribunal de Primera Instancia al permitir la continuación del presente pleito por establecer como únicos hechos materiales en controversia asuntos que, en realidad, constituyen cuestiones estrictamente de derecho cuya determinación corresponde exclusivamente al Tribunal. En específico: (1) si Pep Boys ejerció la diligencia de un buen padre de familia al reclutar, entrenar y supervisar al empleado; y (2) a cuánto ascienden los daños alegadamente sufridos por los peticionarios.

> Erró y abusó de su discreción el Tribunal de Primera Instancia al no desestimar sumariamente el caso, pese a la clara improcedencia de la reclamación dirigida contra el patrono por actos personales e imprevisibles del empleado, conforme a la jurisprudencia establecida en *Hernández Vélez v. Televicentro*, 168 DPR 803 (2006), toda vez que la conducta imputada al empleado fue completamente ajena a sus funciones y en beneficio

---

[8] Entrada Núm. 72 del caso núm. BY2024CV02262 del SUMAC.
[9] Entrada Núm. 78 del caso núm. BY2024CV02262 del SUMAC.
[10] Entrada Núm. 79 del caso núm. BY2024CV02262 del SUMAC.

propio, lo que excluye tanto la responsabilidad vicaria como directa de Pep Boys.

El 6 de diciembre de 2025, emitimos una *Resolución* en la que le ordenamos a la parte recurrida que, dentro del término dispuesto en la Regla 37 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 37(A), el cual vencía el 11 de diciembre de 2025, presentara un escrito en el que mostrara causa por la cual no debiéramos expedir el auto de *certiorari* y revocar el dictamen impugnado.

Transcurrido el referido término, la parte recurrida no compareció, por lo que procedemos a resolver, sin el beneficio de su comparecencia.

## II

### A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés

público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público. Así también, la referida disposición establece que este Foro podría ejercer su discreción para revisar resoluciones y órdenes interlocutorias en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por tanto, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.,* 117 DPR 729,

745 (1986). Véase, además, *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**B**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Batista Valentín v. Batista Valentín,* res. 1 de octubre de 2025, 2025 TSPR 93; *Cooperativa de Seguros Múltiples de Puerto Rico y Popular Auto, LLC. v. Estado Libre Asociado de Puerto Rico,* res. 5 de agosto de 2025, 2025 TSPR 78; *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979-980 (2022). Este mecanismo lo puede utilizar, tanto la parte reclamante, como aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues permite agilizar el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos

materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos la parte promovida prevalece. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que

puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024); *Oriental Bank v. Caballero García*, supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Ahora bien, el Tribunal Supremo ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria, porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023).

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro prirmario. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera

Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc.,* res. 7 de enero de 2025, 2025 TSPR 1; *BPPR v. Zorrilla y otro,* supra; *Birriel Colón v. Econo y otro,* 213 DPR 80, 91 (2023). Por ello, nuestra revisión es *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 611 (2023). A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y luego de realizar todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro,* supra; *Meléndez González et al. v. M. Cuebas,* supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, nos corresponde revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.,* supra.

## C

En nuestro ordenamiento jurídico, los actos y omisiones en que intervenga cualquier género de culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual. Artículo 1063(e) del Código Civil de 2020, 31 LPRA sec. 8984(e). Por ello, el Artículo 1536 del Código Civil de 2020 dispone que, "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801.

De este modo, la responsabilidad civil al amparo de esta norma requiere la concurrencia de tres elementos, a saber: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la

acción y omisión del demandado y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

Las acciones por responsabilidad civil extracontractual "se distinguen porque la responsabilidad frente al perjudicado surge sin que le preceda una relación jurídica entre las partes". *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 908 (2012). En estos casos, la culpa o negligencia consiste en la falta de cuidado al no anticipar o prever las consecuencias de un acto, tal y como lo haría una persona prudente y razonable en iguales circunstancias. *Montalvo v. Cruz*, 144 DPR 748, 755–756 (1998). De este modo, la norma *general* exige que se actúe con el grado de cuidado, diligencia, vigilancia y precaución que exijan las particularidades del asunto de que trate. *Monllor v. Soc. de Gananciales*, 138 DPR 600, 604 (1995).

El Código Civil de 2020 -vigente, tanto en la actualidad, como al momento de ocurrir los hechos que originan la *Demanda* de epígrafe- codifica en su artículo 1540 los conceptos de responsabilidad por hecho ajeno y responsabilidad vicaria. La referida disposición establece lo siguiente:

> Responden de los daños que causan la culpa o negligencia de sus dependientes, las siguientes personas:
>
> (a) el progenitor que tiene la custodia inmediata de sus hijos menores de edad no emancipados, por los daños que estos causan;
>
> (b) los tutores, por los daños que causan sus pupilos;
>
> (c) los maestros, directores de artes u oficios, por los daños que causan sus alumnos o aprendices mientras permanecen bajo su custodia;
>
> **(d) los patronos públicos o privados, por los daños que causan sus empleados en el servicio de las ramas en que los tengan empleados o con ocasión de sus funciones;**

(e) los empleadores, por los daños que causa un contratista independiente cuando le encomiendan una actividad irrazonablemente peligrosa; y

(f) los dueños de vehículos de motor, por los daños que causa una persona que autoricen a conducirlos.

**Las personas mencionadas en los incisos (a), (b) y (c) no son responsables, si prueban que ejercieron la diligencia propia de una persona razonablemente prudente. <u>Las mencionadas en los incisos (d), (e) y (f) pueden exigir la restitución de lo pagado a sus dependientes que incurran en culpa o negligencia</u>.**

Artículo 1540 del Código Civil de 2020, 31 LPRA sec. 10805. (Negrillas y subrayado suplidos).

Sobre el concepto de responsabilidad vicaria, *según estuvo codificado en el hoy derogado Artículo 1803 del Código Civil de 1930, 31 LPRA sec. 5142,* nuestro Tribunal Supremo reconoció que este surgió como excepción al principio de responsabilidad personal por los actos propios,[11] la cual únicamente podía aplicarse a las personas o entidades expresamente dispuestas en la referida disposición. Véase *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 486 (2022).

Así, bajo la normativa que se mantuvo vigente hasta que el 28 de noviembre de 2020 el nuevo Código Civil entró en vigor, a los patronos públicos y privados no se les responsabilizaba específicamente por los daños que ocasionaran sus empleados en el ejercicio de su trabajo, sino únicamente a los "dueños o directores de un establecimiento". No obstante, a estos se les permitía liberarse de dicha responsabilidad, si demostraban que emplearon toda la diligencia de un buen padre de familia. *Íd.*, citando a *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 982-983 (2021). Nótese que lo anterior surge del texto del antiguo Artículo 1803, *supra,* en el que se establecía que la responsabilidad de "los dueños o directores de

---

[11] Es preciso recordar que, en el ordenamiento jurídico vigente antes de la entrada en vigor del *Código Civil de 2020*, la responsabilidad que dimana de un hecho propio estaba codificada en el Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141.

un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones", cesaría "cuando [...] prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño".

Así, según la interpretación formulada por el Tribunal Supremo -*en el contexto del derogado Artículo 1803, supra*- para activar la presunción de culpa contra el patrono, era necesario que su promovente estableciera *prima facie*, los elementos siguientes:

(1) una relación de dependencia entre el patrono y el empleado,

(2) que el empleado actuó en el desempeño de los ramos de su oficio con el propósito de servir y proteger los intereses del patrono, y

(3) que el empleado tuvo culpa en el desempeño de esas funciones.

*Pérez et al. v. Lares Medical et al.*, supra, pág. 983.

A la forma de culpa antes mencionada, que le era imputable a los dueños o directores de un establecimiento, el Tribunal Supremo le llamó culpa *in vigilando, in instruendo* o *in eligendo. Íd.* Es decir que, bajo ese esquema, era necesario evaluar si, en caso de estos haber sido diligentes en vigilar, instruir o escoger a sus empleados, el daño no hubiese ocurrido. *Íd.*

Ahora bien, cuando se analiza el Artículo 1540 vigente, en contraposición a su homólogo derogado, el Artículo 1803, llama la atención que, de sus respectivos textos, surgen diferencias notables que no pasan desapercibidas. En primer lugar, es necesario reseñar que se destaca la intención, que surge del actual Artículo 1540, *supra,* de codificar una responsabilidad atribuible a "los patronos públicos o privados, por los daños que causan sus empleados en el servicio de las ramas en que los tengan empleados o con ocasión de sus funciones". Así también, surge de la referida disposición que esta responsabilidad es propiamente vicaria. Ello, dista del concepto

de responsabilidad por hecho ajeno, que es el que se contempla en los incisos (a), (b) y (c) del Artículo 1540, a pesar de que este se titula "Responsabilidad vicaria".

Sobre lo anterior, aludimos a la explicación provista por el Prof. Miguel R. Garay Aubán en sus comentarios al Código Civil de 2020, por su carácter altamente persuasivo. En lo pertinente, sobre la aprobación del Artículo 1540, el profesor Garay Aubán explica, en su comentario general, lo siguiente:

> Este artículo corresponde al anterior Artículo 1803 pero se le adicionaron dos (2) legitimados pasivos que no se mencionan en dicho artículo a saber: (a) los empleadores y los dueños de vehículos de motor. El título del artículo contiene un error de omisión ya que debe decir: "Responsabilidad Vicaria y Responsabilidad por el Acto Ajeno". La omisión sobrevino por cuanto originalmente se pretendió legislar una responsabilidad propiamente vicaria para todos los legitimados allí mencionados. Lo anterior, no obstante, en la discusión de este artículo los profesores y jueces asesores de la Comisión entendieron que imponerle[s] responsabilidad vicaria a los progenitores, a los tutores y a los maestros de arte y oficios era una responsabilidad muy onerosa. Por ello se le insertó nuevamente al artículo la penúltima oración de dicho artículo que dispone: "Las personas mencionadas en los incisos (a), (b) y (c) no son responsables si prueban que ejercieron la diligencia propia de una persona prudente y razonable." **Con ello se le reinsertó al artículo la responsabilidad por el acto ajeno conjuntamente con la responsabilidad vicaria que aplica respecto a los mencionados incisos (d), (e) y (f)**. (Negrillas suplidas).

M. R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, 2.ª ed. rev., San Juan, Ed. SITUM, 2021, T. 4, págs. 574-575.

Ahora bien, en su comentario sobre el concepto de responsabilidad vicaria el profesor Garay Aubán distingue los conceptos de responsabilidad por hecho ajeno y responsabilidad vicaria. En lo que nos resulta relevante, dispone lo siguiente:

> Contrario a la responsabilidad por el acto ajeno, la responsabilidad vicaria le impone responsabilidad a un legitimado pasivo por la culpa o negligencia de otro. No por la culpa o negligencia propia. **Así un patrono responde por la negligencia de su empleado "en las ramas en que las tiene empleado y con ocasión de sus funciones". No importa que el patrono no incurrió por sí en ninguna culpa o negligencia**. Basta con la negligencia de su empleado en las circunstancias dispuestas en el Código. [...]

> El problema del Código anterior era que el mismo no reglamentaba la responsabilidad vicaria que se le impone a los patronos, sean éstos públicos o privados. Dicha responsabilidad se trajo del "common law" norteamericano por vía jurisprudencial a base de una teoría de *Respondeat Superior*.

Garay Aubán, *Código Civil 2020 y su historial legislativo, op. cit.,* pág. 576-577.

El análisis formulado por el profesor Garay Aubán en los comentarios antes citados cuenta con la validación de otros profesores expertos en la materia, quienes se han expresado en términos similares y cuyas expresiones también incorporamos, por su carácter persuasivo. Por ejemplo, de forma congruente, el Prof. Pedro Cabán Vales expresa lo siguiente:

> El segundo y más importante de los cambios es que clasifica textualmente los supuestos de responsabilidad en dos categorías: los incisos (a), (b) y (c) constituyen lo que la doctrina científica conoce como *responsabilidad presunta, primaria o por acto ajeno*, conforme a la cual se presume la responsabilidad de los sujetos denominados, pero estos pueden liberarse si demuestran que fueron diligentes; [cita omitida] **los incisos (d), (e) y (f) son supuestos de responsabilidad vicaria, conforme a la cual los sujetos nominados responden siempre por el daño culposo o negligente causado a sus dependientes, no importa que hayan sido diligentes**. [Cita omitida] (Bastardillas en el texto original; negrillas suplidas)

P. Cabán Vales, *La responsabilidad extracontractual plural en el Código Civil de Puerto Rico de 2020: historial legislativo de su clasificación,* 57 Rev. Jur. UIPR 549, 568-569 (2022-2023).

De modo similar y cónsono con los profesores Garay Aubán y Cabán Vales, podemos destacar por su carácter persuasivo lo expresado por los profesores Luis Muñiz Arguelles, Migdalia Fraticelli Torres, Eugene F. Hestres Vélez, Félix Figueroa Cabán y Belén Guerrero Calderón, quienes señalan lo siguiente:

> Otro cambio fundamental en cuanto a la responsabilidad vicaria se refiere al derecho de recobro. Dispone el artículo 1540 que las personas mencionadas en los incisos (a), (b) y (c) tienen a su haber como defensa y eximente de responsabilidad el ejercicio de la diligencia propia de una persona prudente, pero les está vedado el derecho a recobrar lo pagado. **Por otro lado, las mencionadas en los incisos (d), (e) y (f) pueden exigir la restitución de lo pagado a sus dependientes**

**que incurran en culpa o negligencia[,] pero no tienen disponible la defensa de persona prudente y razonable**. (Negrillas suplidas).

L. Muñiz Arguelles, M. Fraticelli Torres, E. F. Hestres Vélez, F. R. Figueroa Cabán & B. Guerrero Calderón, *El Código Civil de 2020 – Primeras impresiones,* San Juan, Fideicomiso para la Escuela de Derecho de la Universidad de Puerto Rico, 2021, pág. 247.

Por un lado, recalcamos que, entre los cambios fundamentales entre el derogado Artículo 1803, *supra,* y el actual Artículo 1540, *supra,* resalta que el inciso (d) de este último sustituyó "dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes", por "patronos públicos o privados, por los daños que causan sus empleados". No obstante, ambos artículos todavía comparten la misma salvedad a los efectos de que el acto que causa la culpa o la negligencia de sus dependientes debe ser realizado en el ejercicio de funciones inherentes a su puesto o en ocasión de sus funciones.[12]

Así, en el contexto de una demanda al amparo de los artículos 1802 y 1803 del Código Civil de 1930 instada en contra de un patrono y su empleado por avances de naturaleza sexual realizados por este en el curso del empleo en contra de una contratista independiente, nuestro Tribunal Supremo liberó de responsabilidad al patrono. Véase, *Hernández Vélez v. Televicentro,* 168 DPR 603 (2006). En específico, en el contexto del análisis realizado al amparo del *Artículo 1803, supra,* el Alto Foro estableció que dichas actuaciones no fueron realizadas con el fin de "servir y proteger los intereses del patrono". *Íd.,* pág. 817. Ello, debido a que no halló una "conexión razonable y pertinente entre" un acto que catalogó de "despreciable, depravado y procesable" por parte del individuo y los

---

[12] Como se verá a continuación, los fraseos de ambos artículos son similares. El Artículo 1803 derogado, 31 LPRA sec. 5142, dispone que debe ser "en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones", mientras que el Artículo 1540 vigente, 31 LPRA sec. 10805, establece que los daños que causan la culpa o la negligencia de sus dependientes deben ocurrir "en el servicio de las ramas en que los tengan empleados o con ocasión de sus funciones".

intereses del patrono. *Íd.* En fin, en el contexto de los hechos ante sí en esa ocasión, el Tribunal Supremo concluyó lo siguiente: "[E]l cuadro fáctico ante nos apunta indubitadamente a que la actuación del empleado respondía exclusivamente a motivos personales, que en nada beneficiaban el negocio del patrono ni estaban dentro de la esfera de su autoridad". *Íd.*

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

### III

En primer lugar, dada su naturaleza interlocutoria, subrayamos que el *certiorari* es el mecanismo adecuado para la revisión del dictamen recurrido. Ello, por tratarse de la denegatoria de una moción de carácter dispositivo; a saber, una moción de sentencia sumaria. Así, luego de evaluar el recurso ante nos a la luz de los criterios de nuestra Regla 40, *supra*, concluimos que procede expedir el auto de *certiorari* solicitado, para revocar la determinación recurrida. Ello, pues correspondía dictar sentencia sumaria a favor de la parte peticionaria y declarar No Ha Lugar la *Demanda* de epígrafe. Veamos.

A continuación, procedemos al análisis conjunto de los señalamientos de error formulados por Pep Boys. Mediante estos, adujo que el foro *a quo* erró al permitir la continuación del presente pleito, tras establecer como únicos hechos materiales en controversia asuntos que, en realidad, constituyen cuestiones de estricto derecho y cuya determinación corresponde exclusivamente al foro judicial. Asimismo, esbozó que el foro primario incidió al no desestimar sumariamente el caso, a pesar de la clara improcedencia de la reclamación dirigida en su contra, como resultado de actos personales e imprevisibles por parte de un empleado. Lo anterior, conforme a la jurisprudencia establecida en *Hernández Vélez v. Televicentro,* 168 DPR 803 (2006), en la medida que la conducta

imputada al empleado resultó completamente ajena a sus funciones y únicamente en beneficio propio. Por tanto, es la postura de Pep Boys que, en su calidad patronal, ello le excluye, tanto de responsabilidad vicaria, como directa. Tiene razón Pep Boys.

Comenzamos por subrayar que, como foro apelativo intermedio, estamos llamados a revisar *de novo* la moción de sentencia sumaria instada por la parte peticionaria ante el foro *a quo*. Ello, ya que, en su interpretación de la Regla 36 de Procedimiento Civil, *supra,* nuestro Tribunal Supremo ha reiterado que estamos en la misma posición que el foro primario para adjudicar la procedencia de una moción de sentencia sumaria.

En consideración a lo anterior, y tras llevar a cabo el referido análisis *de novo* que nos encomienda nuestro más Alto Foro, acogemos por referencia la relación de hechos incontrovertidos formulada por el foro primario en la *Resolución y Orden* recurrida. Así, luego de llevar a cabo el referido análisis respecto a la moción de sentencia sumaria instada por Pep Boys, somos del criterio que el ejercicio formulado por el foro *a quo,* a los efectos de determinar qué hechos se encontraban incontrovertidos, fue adecuado. En consecuencia, nos encontramos en posición de suscribirlo y acogerlo por referencia.

No obstante, si bien coincidimos con el ejercicio llevado a cabo por el foro primario a los fines de formular la relación de hechos incontrovertidos, diferimos en cuanto al análisis sobre hechos en controversia formulado por dicho primario. Ello, principalmente debido a que este se basa en una aplicación incorrecta del derecho aplicable al caso ante nos.

En primer lugar, llama a nuestra atención que, en su exposición del derecho aplicable, el foro primario señala que "[e]l Código Civil de 1930 fue derogado por el Código Civil de 2020, sin embargo, los hechos ocurrieron antes de la aprobación del Código

Civil de 2020, por lo que debe examinarse el evento a [la] luz de[l] Código Civil de 1930".[13] Apoyado en esa premisa, el foro *a quo* señaló como hecho material en controversia que, conforme a su criterio, amerita la celebración de un juicio en su fondo, si Pep Boys, al reclutar, entrenar y supervisar al empleado que interactuó con Liz Noemí Keener, empleó toda la diligencia de un buen padre de familia, como para liberarse de responsabilidad.

Así, nos corresponde aclarar que los hechos que originaron la *Demanda* de epígrafe ocurrieron el **11 de diciembre de 2023**.[14] Toda vez que la vigencia del Código Civil de 2020 comenzó a partir del **28 de noviembre de 2020**, es forzoso concluir que el cuerpo normativo aplicable al caso ante nos lo es el Código Civil de 2020 y no su homólogo derogado de 1930, como afirmó el foro a quo en la *Resolución y Orden* recurrida.

La aclaración anterior resulta material al análisis de este caso pues, tal y como surge de nuestra exposición de derecho aplicable, el actual Artículo 1540, *supra,* -contrario al Artículo 1803 derogado- convirtió la responsabilidad de los patronos por los daños que puedan causar la culpa o negligencia de sus dependientes, en una propiamente vicaria. Lo anterior, en la medida que ya no tienen a su disposición la defensa de que ejercieron la diligencia propia de una persona razonablemente prudente. Así las cosas, el foro primario erró al determinar como un hecho en controversia si, a la luz de los hechos incontrovertidos, Pep Boys empleó toda la diligencia de un buen padre de familia, como para liberarse de responsabilidad.

Ahora bien, si bien en su calidad de patrono privado Pep Boys no cuenta con esa defensa, de conformidad con el actual Artículo 1540, *supra,* lo cierto es que, a la luz de los hechos incontrovertidos

---

[13] Véase, *Resolución y Orden* recurrida, pág. 18. Entrada Núm. 71 del caso núm. BY2024CV02262 del SUMAC.
[14] Véase, *Resolución y Orden* recurrida, hecho incontrovertido núm. 5, pág. 5. Entrada Núm. 71 del caso núm. BY2024CV02262 del SUMAC.

de este caso y de conformidad con la doctrina dispuesta en *Hernández Vélez v. Televicentro*, supra, la causa de acción de epígrafe es improcedente. Recalcamos que, en el referido caso, el Tribunal Supremo concluyó, mediante opinión mayoritaria, que un patrono no responde por actuaciones de un empleado, cuando estas no hayan sido realizadas con el fin de servir y proteger los intereses del patrono. En ese sentido, dispuso que actuaciones constitutivas de hostigamiento sexual, responden exclusivamente a motivos personales, que en nada benefician el negocio del patrono, ni se encuentran dentro de su esfera de autoridad.

Subrayamos, además, que, si bien el Tribunal Supremo resolvió *Hernández Vélez v. Televicentro*, supra, en el contexto de una causa de acción instada al amparo del derogado Artículo 1803, *supra*, su normativa sin duda puede extrapolarse a la interpretación del actual Artículo 1540, *supra*. Ello, en la medida que ambas disposiciones contemplan el que los actos en cuestión se realicen en el ejercicio de funciones inherentes al puesto o en ocasión de sus funciones, lo cual ciertamente no ocurrió en *Hernández Vélez v. Televicentro*, supra, ni tampoco en el caso de epígrafe.

En virtud de lo anterior, corresponde dictar sentencia sumaria a favor de Pep Boys. En consecuencia, procede declarar No Ha Lugar la *Demanda* de epígrafe.

**IV**

Por los fundamentos que anteceden, se expide el auto solicitado y, tras concluir que corresponde dictar sentencia sumaria a favor de Pep Boys-Manny, Moe & Jack of Puerto Rico, Inc. h/n/c Pep Boys, se revoca la *Resolución y Orden* recurrida. En virtud de ello, se dicta sentencia sumaria a favor de la parte peticionaria, se declara No Ha Lugar la *Demanda* de epígrafe y se ordena el archivo del presente caso a nivel de instancia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones